# In the United States District Court for the Western District of Texas

| | | |
|---|---|---|
| BEATRICE GOVEA | § | |
| | § | |
| v. | § | SA-10-CV-200-XR |
| | § | |
| LANDMARK INDUSTRIES, LTD. | § | |

## ORDER

On this day came on to be considered Defendant's motion for summary judgment (doc. no. 23). The motion is denied.

### BACKGROUND AND CONTESTED FACTS

Plaintiff Beatrice Govea filed this lawsuit on February 1, 2010 in state court alleging that the Defendant violated the Family and Medical Leave Act (FMLA). The Defendant timely removed the case to this court alleging federal question jurisdiction.

In its motion for summary judgment, Defendant argues that Plaintiff failed to make a proper FMLA leave request and voluntarily abandoned her job by violating the company's no call/no show policy.

Plaintiff was employed as a convenience store manager for Timewise, a Landmark-owned company. She began her employment in 2005.

On December 27, 2007, Govea took her father to a hospital emergency

room. Her father was informed that he required lung surgery.[1] Sometime the next day Govea called her supervisor, Adam Nejat, and informed him that she would need to leave work early that day because of her father's medical condition.[2] During these conversations with her supervisor Plaintiff did not formally request FMLA leave.[3] Although her father was scheduled to undergo lung surgery, Plaintiff thought his condition was not serious and that after surgery he would be fine.[4] Following the January 4, 2008 surgery, however, Plaintiff realized that her father was not "doing good" and he could not breathe on his own.[5] She subsequently called Mr. Nejat, informed him of the situation, and took two days off from work. Those absences were approved by Mr. Nejat.[6]

When she returned to work on December 30, she requested leave from January 2, 2008 through January 6, 2008.[7] She again explained her father's

---

[1] Pl's Depo at pp. 59-60.

[2] *Id.* at pp. 60 - 62 ("I did all my - my stuff at the store, called my supervisor, told them the situation, explained to him the situation. I told him I was going to leave as soon as the armored truck got there. He said ok.... To make him aware that my dad was having that emergency surgery and that I had to be at the - back at the hospital.... At the time he did not ask me when I was going to be back to work. He just told me to make him aware of how everything came out or his condition.").

[3] Mr. Nejat insists that for an employee to request formal FMLA leave an employee must state I want FMLA leave or a leave of absence for a serious medical condition. Nejat's Depo at pp. 70-71. Mr. Nejat acknowledges that he knew Plaintiff's father was going to undergo surgery. Nejat's Depo at p. 72.

[4] Plaintiff's Depo at 65-66.

[5] *Id.* at 69.

[6] *Id.* at 70.

[7] *Id.* at 74-75.

health condition and that he was not doing good and requested time off.[8] According to the Plaintiff, Mr. Nejat responded by saying that the only thing she could do was take vacation.[9] Plaintiff testified that the "way he [Mr. Nejat] approached" her about the subject of time off was hostile.[10]

Plaintiff was expected to return to work on Monday, January 7, 2008, however, she did not return as scheduled because her father's condition worsened.[11] On Tuesday, January 8, she spoke with Mr. Nejat about the situation. The assistant manager was covering the store for her.[12] On January 8, Plaintiff informed Mr. Nejat that her father was critical and on life support.[13] Mr. Nejat informed Plaintiff that she still had five days of vacation if needed.[14] Plaintiff acknowledges that she did not formally request FMLA leave at that time.[15]

On January 14, Plaintiff met with Mr. Nejat. She informed him that her father's condition was not improving and that she needed FMLA leave.[16]

---

[8] *Id.* at pp. 73-74.

[9] *Id.* at 74.

[10] *Id.* at 81-82.

[11] *Id.* at 105.

[12] *Id.* at 114-116.

[13] *Id.* at 119.

[14] *Id.* at 121.

[15] *Id.* at 123.

[16] Mr. Nejat denies that Plaintiff requested FMLA leave and did not even reference the need to be placed on a leave of absence because of her father's condition. Nejat's Depo at p. 67.

According to Plaintiff, Mr. Nejat responded that he needed her to open a new store. Plaintiff alleges that she and Mr. Nejat reached an understanding where he was going to work on securing her FMLA leave and that in the interim she would assist him in opening the new store.[17] Plaintiff testified that she began a routine of going to work, spending the whole night at the hospital, going home to shower and returning to work. She did this for about a week and a half.[18] She then informed Mr. Nejat that she was unable to continue in this vein and told him that she needed FMLA leave.[19] Mr. Nejat responded by telling her that the store would be opened soon, "hang in there" and that she "could do it."[20] About a week later her father's condition improved and he was discharged from the hospital and returned home, but he required "24 hour care." On February 3, however, he stopped breathing and was transported back to the hospital.[21] On February 5, Plaintiff and Mr. Nejat again discussed the situation and Plaintiff again requested FMLA leave.[22] He responded he was "working on it."[23]

Plaintiff was transferred to the new store location effective February 21,

---

[17] Plaintiff's Depo at 130-133.

[18] *Id.* at 137.

[19] *Id.* at 138.

[20] *Id.* Mr. Nejat denies Plaintiff's version of events and testified that Plaintiff failed to call him between January 13 through January 21. Mr. Nejat was uncertain whether she worked during this time frame. Nejat's Depo at pp. 64-65.

[21] Plaintiff's Depo at 140.

[22] *Id.* at 145.

[23] *Id.*

4

2008.[24] On February 27, 2008, Govea received a phone call during her work shift that her father stopped breathing and was being taken to the hospital by ambulance.[25] She left her shift early and notified Mr. Nejat that she was leaving the store and had been unable to contact the assistant store manager.[26] In a proceeding before the Texas WorkForce Commission, Mr. Nejat acknowledged that Plaintiff told him that she was taking her father to the hospital.[27] Ms. Govea and Mr. Nejat discussed how the store deposit needed to be picked up by the armored truck.[28] Plaintiff testified that Mr. Nejat was upset and called her numerous times[29] as she was attending to her father being placed into the ambulance.[30] Mr. Nejat subsequently went to the store to handle the deposit and initially thought that the deposit was $2,000 short.[31] He again called Plaintiff about the alleged shortage as she was driving to the hospital.[32] Later that evening Plaintiff testified that she called the assistant store manager (Jeff) and he informed her that the store was covered and everything was fine.

---

[24] Employee Change of Status Report.

[25] *Id.* at 159.

[26] *Id.* at 160.

[27] Transcript of Proceeding at p. 10, attached to Plaintiff's Response as Exhibit 2D.

[28] *Id.*

[29] Defendant objects to Plaintiff's phone records as not being an accurate summary. The objection is overruled. Plaintiff did not intend for her exhibit to be a complete summary of all calls, but rather as an aid to the Court to highlight some of the calls at issue.

[30] *Id.* at 161-162. Mr. Nejat claims he was only told that Plaintiff left the store because of an emergency and was not told any details of the emergency. Nejat's Depo at p. 77.

[31] It is uncontested that there was in fact no shortage of funds.

[32] Plaintiff's Depo at 162-163.

Plaintiff testified that she did not call Mr. Nejat because she was still upset with him and how he was acting.[33]

Plaintiff expected to return to work the following Monday (March 3), but her father's condition had not improved and she called the Human Resources department and spoke to Heidi Weiss and asked how she could obtain FMLA leave.[34] Plaintiff testified that she informed Ms. Weiss about how she was requesting FMLA leave from Mr. Nejat and also complained about the telephone calls he made concerning the alleged shortage.[35] Ms. Weiss allegedly apologized about the situation and informed the Plaintiff that she would fax her the necessary papers to complete her FMLA request.[36] Several hours later, however, Ms. Weiss informed her that she could not process the FMLA leave because Plaintiff's employment had been terminated by Mr. Nejat.[37]

For some unknown reason, even though the Company's position was that

---

[33] *Id.* at 163-165.

[34] *Id.* at 171, 173.

[35] *Id.* at 173-174.

[36] *Id.* at 174-175. The company denies these allegations and asserts that the Plaintiff told Ms. Weiss that she was quitting. Depo of Chuck Miller (Director of Operations) at p. 40. Ms. Weiss's testimony before the Texas WorkForce Commission, however, also acknowledges that she told the Plaintiff that her situation may qualify for FMLA leave. Transcript of Proceeding at pp. 40-42, attached to Plaintiff's Response as Exhibit 2D.

[37] *Id.* Ms. Weiss contradicts this testimony. She testified that on March 3, 2008, Plaintiff called her and told her that she was quitting because Mr. Nejat was "insensitive" and she "could not work for him anymore." Plaintiff also recounted to her that Mr. Nejat kept calling her as her father was being transported by ambulance to the hospital. Weiss Depo at pp. 66, 68-69. Ernest Navarro, Mr. Nejat's supervisor, testified that Plaintiff called and quit because Mr. Nejat "had no heart" and she "could not understand why he would be calling her when her dad - she was in the back of the ambulance with her dad very ill." Navarro Depo at p.94.

6

Plaintiff verbally communicated her quitting employment on March 3, Mr. Navarro tried contacting Plaintiff by phone on March 10 and they spoke on March 13.[38] An Employee Change of Status Report indicating Plaintiff's termination was not completed until March 26, 2008.[39]

Plaintiff's father passed away on May 22, 2008.

## Summary Judgment Standard

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248; *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). A fact is "material" if its resolution in favor of one party might affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002).

The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the

---

[38] Doc. 26-9, page 31. Plaintiff's phone log, however, claims that Plaintiff spoke with Mr. Navarro for 28 minutes on March 5.

[39] Doc. 26-9, page 29.

moving party meets its initial burden, the nonmoving party "must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). To avoid summary judgment, the nonmoving party must adduce admissible evidence that creates a fact issue concerning the existence of every essential component of that party's case and unsubstantiated assertions of actual dispute will not suffice. *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992). The opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991). The Court reviews all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## Analysis

### 1. A Material Fact issue exists as to whether Defendant violated the FMLA

The FMLA was enacted to permit employees "to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. § 2601(b)(2).

The "FMLA ... protects employees from retaliation or discrimination for exercising their rights under the FMLA." *Mauder v. Metro. Transit Auth. of Harris Cty.*, 446 F.3d 574, 580 (5th Cir. 2006).

"The FMLA requires only that an employee contact her employer and state that leave is needed as soon as practicable under the facts and circumstances of

the particular case. 29 C.F.R. § 825.303(a)-(b) (2008). An employee need not expressly assert rights under the FMLA or even mention the FMLA. *Id.* Once an employee meets this low threshold, she is merely required to respond to reasonable employer inquiries for additional information." *Saenz v. Harlingen Medical Center, L.P.*, 613 F.3d 576, 583 (5th Cir. 2010).

The company argues that Ms. Govea failed to communicate with Mr. Nejat at any time after February 27, 2008. It further argues that Plaintiff never provided any documentation to support her claim that her father was suffering from a serious medical condition and that her absences were related to his serious medical condition. Accordingly, the Defendant denies that it violated the FMLA.

As stated above, the burden is on the Defendant to show that "there is an absence of evidence to support the nonmoving party's case." The Court concludes that Plaintiff has presented sufficient summary judgment evidence to create a material fact issue on whether she gave adequate notice of the need to be absent from work to her supervisor. *See Ladner v. Hancock Medical Center*, 299 Fed. Appx. 380(5th Cir. 2008); *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995) (sufficiency of notice is determined by "whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition"); 29 C.F.R. § 825.208(a)(1).

As early as January 4, 2008, Plaintiff's supervisor was aware that

Plaintiff's father had undergone lung surgery and that he was not doing well. On January 8, Mr. Nejat was aware that Plaintiff's father had been placed on life support. Pursuant to Plaintiff's version of events, on January 14, she requested FMLA leave. According to Plaintiff, Mr. Nejat refused her request and if Plaintiff's version of events is correct, he never forwarded the verbal request to his immediate supervisors or the human resources department.[40] Plaintiff asserts she again made her request for FMLA leave on February 5, and Mr. Nejat merely responded that he was "working on it." On February 27, Plaintiff notified her supervisor that she was transporting her father to the hospital and she contacted the assistant manager and was told everything was "covered."

Defendant places great emphasis on the fact that Plaintiff failed to communicate with anyone from the company on February 28, February 29, March 1, and March 2. Even assuming this is factually correct, this does not address why the company did not place the Plaintiff on FMLA leave after she made various requests throughout the month of February. Also unavailing are Defendant's arguments that Plaintiff failed to follow company policies regarding FMLA leave. See 29 C.F.R. § 825.303 ("In the case of a medical emergency requiring leave because of an employee's own serious health condition or to care for a family member with a serious health condition, written advance notice pursuant to an employer's internal rules and procedures may not be required

---

[40] Defendant argues that any leave requests made prior to February 2008 are not relevant. The Court disagrees. These alleged requests place into context whether Mr. Nejat knew of the seriousness of Plaintiff's father's health condition.

10

when FMLA leave is involved."). Defendant further argues that Plaintiff never provided medical documentation regarding her father's serious medical condition. Defendant, however, misconstrues the FMLA regulations. *When leave is taken because of the serious health condition of a family member, an employer may require an employee to obtain a medical certification.* See 29 C.F.R. § 825.306. Plaintiff argues that Mr. Nejat never allowed her to take FMLA leave and accordingly the employer never requested a medical certification. Finally, Defendant argues that Plaintiff failed to communicate with her supervisor "as soon as practicable" about the February 27 unforeseeable emergency. Plaintiff argues that she contacted Mr. Nejat on that day and she complains that Mr. Nejat repeatedly phoned her that day as she was attempting to transport her father to the hospital.

Defendant further stresses that Plaintiff verbally communicated to the human resources director that she quit. Plaintiff disputes this assertion. Accordingly, a material fact issue exists as to whether the Defendant violated the FMLA.

## 2. Plaintiff's claims prior to February 1, 2008 are not barred by limitations

Defendant argues that any claims asserted by Plaintiff for denial of FMLA leave occurring prior to February 1, 2008 are barred by the two-year limitations period. Defendant also argues that the three-year limitations period is only applicable for willful violations and that Plaintiff failed to assert any willful

11

claim in her state court petition.[41]

Plaintiff responds that she identified her allegations by date in her petition, Defendant never filed a motion for more definite statement, and in her prayer she sought "all rights and remedies available to her" and that was adequate to place Defendant on notice that she was asserting a willful violation of the FMLA. The Court agrees with Plaintiff's position.

The Court has been unable to locate any caselaw addressing the adequacy of pleading willfulness. In this case, however, the issue will likely be moot. 29 U.S.C.A. § 2617 provides that:

> Any employer who violates section 2615 of this title shall be liable to any eligible employee affected--
> (A) for damages equal to--
> (i) the amount of--
> (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or
> (II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks (or 26 weeks, in a case involving leave under section 2612(a)(3) of this title) of wages or salary for the employee;
> (ii) the interest on the amount described in clause (i) calculated at the prevailing rate; and
> (iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii), respectively; and

---

[41] Plaintiff never filed an amended complaint in this case.

(B) for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

Plaintiff continued working prior to February 1, 2008 and suffered no lost wages, nor did she apparently suffer monetary damages for the provision of care for her father. Defendant's motion to strike the pre-February 1, 2008 allegations is denied. Plaintiff will likely be unable to claim damages for this period; however, as stated above the allegations are relevant to Plaintiff's post-February 1, 2008 claims.

## Conclusion

Defendant's motion for summary judgment (doc. no. 23) is denied. Defendant's motion to strike plaintiff's summary judgment evidence (doc. no. 28) is denied.

It is so ORDERED.

SIGNED this 10th day of February, 2011.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE